Ferris, J.;
Hosea, J., and Swing, J., concur.
Error to special term.
This was an action brought by the treasurer of Hamilton county to recover taxes that were alleged to have been omitted in *256 the return of the plaintiff in error. Under the provisions of the statute it is made the duty of the auditor of the county to cause an examination to be made in certain eases into the returns as listed for taxation, and in the exercise of that duty the auditor placed upon the duplicate, in addition to the amount listed by the insurance company, the sum of $6,827,600. This result was reached by him, as appears from the record, by attacking the position of the insurance company, first with respect to the credits, which under the provisions of the statute they were charged with listing for taxation, and second with respect to the amount of money in bank on the day preceding the second Monday in April.
The case was heard by the judge below on an agreed statement of facts, fully set forth in the record, wherein it appears that the uniform practice of the company had been to make no return for taxation of a large amount of money known as “accumulated deferred dividends or undivided profits. ’ ’
It seemed equally clear from this statement of facts that the insurance company translated the provisions of the statute in such a way as to return for taxation the amount of money in bank as indicated by the balance appearing in its own check book after deducting all outstanding checks.
It was the opinion of the auditor that his duties required him under the provision of the statute to place upon the duplicate the accumulated deferred dividends, upon the theory that they were not under the provisions of lawr “legal bona fide debts,” and further, that outstanding cheeks were not entitled to be deducted in returning for taxation money on deposit at the date prescribed by the statute.
The auditor, under the provisions of Revised Statutes, Section 2730, relying upon the construction given to that section of the Supreme’Court, in Insurance Co. v. Cappellar, 38 Ohio St., 560, and upon the decision of the general term of this court in Equitable Ins. Co. v. Gibson, 11 Court Index, No. 23, as well as upon the interpretation of that same section in a ease in Amazon Ins. Co. v. Cappellar, 8 Bull., 247, 248, placed upon the duplicate the various amounts (as well appear by the record) that had from time to time accumulated and had been placed by the insurance *257 company in a fund known as the accumulated deferred dividend fund. This court had held as to fire insurance companies that “the expression ‘legal bona fide debt owing’ can mean nothing more than a fixed liability to pay a sum or sums certain, due or to become due, at all events to some other person or persons, it being understood, of course, that that is certain which can be made certain, and that the Legislature by using the expression ‘legal bona ficle and owing’ clearly intended to limit the word ‘debts’ to such actual fixed liabilities as if not due, lacked only falling due to be enforcible by action.”
Under such interpretation given to this section, Section 2730, Revised Statutes, the auditor preceeded to charge against the company as credits omitted in the year 1897, $1,095,700; omitted in 1898, $823,200; omitted in 1899, $1,092,100; omitted in 1900, $1,254,500; omitted in 1901, $1,259,200. And the court below found that in 1897 there had been omitted from the bank deposits upon which the treasurer was entitled to recover in this action the sum of $89,200; for the year 1898, $349,500; in the year 1899, $119,400; in the year 1900; $60,800, and in the year 1.901, $674,000, upon which sums there was 'due for taxes upon amounts thus omitted in the year 1897, $31,028.68; in the year 1898, $29,669.31; for the year 1899, $31,184.01; for the year 1900, $4,171.49; for the year 1901, $47,982.02. And upon a full discussion of the questions of law applicable to the facts before him, the court below entered a judgment in favor of the treasurer for $182,728.88.
This action is brought for the purpose of reviewing the judgment of the court below and the interpretation given to the provisions of the statute by the auditor in listing for taxation the credits and the money in bank, as heretofore stated.
.As to the money in bank, Section 2730, Revised Statutes, provides that the term “money” or: “moneys” shall be held to mean and include “every deposit which the person owing, holding in trust, or having the beneficial interest therein, is entitled to withdraw in money on demand.” It would scarcely seem to require more than a statement to indicate the correctness of the position taken by the auditor in the matter of listing moneys on hand for taxation.
*258 There is no question made as to the fact that the money was in'the bank, and the facts leave no reasonable doubt that the money was on deposit subject to check by the company. The company alone could make the demand, and therefore it would follow under the provisions above quoted that the amount on hand subject to check should have been returned for taxation.
It is a travesty upop the plain provisions of the statute to suppose that the mere drawing of cheeks, under the circumstances of this case, that caused an apparent reduction in amount on hand on tax listing day, as appears by the stubs of the bank book, would in fact reduce the amount that-was subject to taxation.
, Balances are neither in fact nor in law arrived- at by this process. The checks drawn were not used, and the drawing of them did not therefore deplete the balance or in any way affect moneys on hand. There was no time, therefore, when this fund on deposit in the various banks was not subject to the legal demand of the Union Central Life Inusrance Company.
The undisputed fact that some of these checks were given for “collateral loans or expenses” and not used for the purpose of paying debts, does not alter the rule, and while a check in law is always overdue, it is nevertheless subject- in the very nature of. things to be recalled, or to be countermanded.
The banks did not guarantee the payment of the checks drawn, and there is no evidence of certification. Therefore it was, that the court below held that the insurance company should be taxed upon the balances that were in bank subject to check upon the dates on which the state, under the statute, impressed its lien upon personalty (Pioneer Trust Co. v. Stick, 71 O. S., 459). This would be so whether the checks were given for the payment of bona fide debts or outstanding obligations of the company, or for loans which the company had determined to make but bad not completed, or matters which were in process of completion.
We are therefore of the opinion, concurring with-the court below, that the auditor very properly added to the returns the amount of moneys that were actually in bank at the time of the listing of the personal property for taxation, and that such amount was not to be depleted by reason of the fact that checks had been drawn against the same. Payne v. Watterson, 37 Ohio St., 121.
*259 The language of Section 2730, Revised Statutes, providing that money shall be held to mean and include ‘ ‘ every deposit which the person owning, holding in trust, or having the beneficial interest therein, is entitled to withdraw in money on demand, ’ ’ is broad enough to. charge the fund as taxable, even if the above construction shall.be held to be erroneous, for under the facts as admitted the fund was held in trust for the benefit of whom it may concern, and therefore taxable as such. Therefore the court below held that these sums, being subject to withdrawal on the demand of the insurance company, were, within the meaning of the law, money that should have been listed for taxation. And this in accordance with what the Supreme Court determined in C., H. & D. Ry. v. Bank, 54 Ohio St., 60.
The rule of law applicable to this situation, we think, may be broadly stated as follows: That when money, as defined, is on deposit subject to a legal demand, it is taxable, whether held by the person in his own right or in a representative relation.
We are of the opinion that the action of the auditor, sustained by the judgment of the lower court, in placing upon the duplicate for taxation the real balances as shown by the testimony in the case, was in accordance with the law as we have here defined it. We have not gone into an extended discussion of the facts appearing in the various tables, but the principle involved is, in our judgment, applicable to the entire situation as developed by the facts before us.
We therefore affirm that branch of the case that relates to the bank deposits wherein the court held that they are not relieved from taxation, simply because it may appear that such funds have been checked against, and we also concur in the conclusion that good faith is not involved in the matter of issuing checks; and we concur with the judgment of the court below, that wherever it appears that money on deposit on the day mentioned in the statute is subject to a legal demand of the depositor, said money is taxable notwithstanding the fact that there may be outstanding checks against such fund.
We come now to consider the second branch of the ease, to-wit, the placing upon the dirplicate for taxation the fund .known as “the accumulated deferred dividend or undivided profits” aris *260 ing on life rate endowment policies. The court below held that the auditor was right and acted within the lines of his duty in determining that such a fund did not represent a legal bona fide debt owing by the insurance company, and was therefore not to be legally deducted from the company’s credit when its returns for taxation are made up.
It is shown by the record that the statute of Ohio requires insurance companies, such as the plaintiff in error is, to create and keep a reserve fund.
This statute provides what the reserve fund shall be, and the act was evidently passed by the Legislature to create such reserve fund as the Legislature deemed sufficient security for the policy holders of the company. The insurance company provided in a by-law for what it terms “accumulated deferred dividends,” being a fund made up of undivided profits arising on life rate endowment policies of the company.
At the end of each year a dividend was declared from this fund to the holders of life rate endowment policies in pursuance of such by-law. The policies themselves did'not require the creation of any such fund or the declaring of any such dividends. Account was kept of the dividends declared upon the books of the company, but the dividends themselves were not paid (when declared) to the policy holders, but remained as cash or assets, in the ‘hands of the company, and the only way in which a policy holder could receive any benefit from snch dividend was by the maturing of his policy and by the application of the dividends at a period earlier than it would otherwise mature. The policy holder, under his contract, continued during the life of the policy to pay his premiums according to contract, unreduced by the application of these dividends or any part of them. By the setting apart of this so-called accumulated deferred dividend fund, a very large cash sum was accumulated by the company and invested by it and large profits were realized upon the investments, which sums were all deducted yearly from the taxable assets of the company, but were subsequently held by the county auditor to be taxable, and the tax upon them was placed upon the duplicate by him, and it is the validity of his action in placing the *261 same upon the duplicate that is involved in this case. The court below found such fund to be taxable.
It is claimed by the insurance company that the accumulated deferred dividend fund, thus made up of undivided profits, is virtually a part of the reverse fund of the company, and it is claimed that the reserve fund of such insurance company is not taxable, and that therefore 'this fund is not taxable. It is also claimed by the company that the dividends declared out of this fund became “debts due and owing” to the policy holders and therefore not taxable. The taxing authorities in this county, on the other hand, claim that the reserve fund of such an insurance company is taxable, and if it should be held exempt, as claimed by the company, still they claim this fund is taxable for the reason that it is no part of the reserve fund of the company, and never ceased to be a part of the cash capital and assets of the company, and never became a debt of the company due and owing to the policy holders.
Only by construction could this dividend fund be called a reserve fund. It is clear and undisputed that it is not a part of the statutory reserve fund. The record nowhere discloses any necessity growing out of the condition of the company for any reserve fund larger than the statutory fund, nor does it seem to us that this fund is in the nature of a reserve fund, nor does it appear to us that it is a fund that the company was required by law or the terms of the policies to keep, or that the business necessities of the company required it. It was not created at the demand of, or by any agreement or understanding with, the policy holders; it was created simply under a by-law enacted by the board of directors at their own will and pleasure, subject to be rescinded by them at any time; and it appears from the record that at one time, when the board of directors thought the exigencies of the company required, they did wipe out on their own motion dividends that had been declared under this same by-law.
It being clear in our opinion that this fund is no proper part of the reserve fund of the company, the question arises whether upon any theory it can escape taxation; whether the large sums above stated can be set apart by the company as a separate fund to be free from taxes from year to year. We are not able to see how upon any principle this fund can be said to be exempt from *262 taxation, but, if authority be-wanted, we are of the opinion that the case of Coit v. Insurance Co., 36 Conn., 512, is, in principle, in point. In the syllabus in that case it is said:
“The defendants were a mutual life insurance company, and on the first of October were chargeable with a considerable amount of declared dividends. These dividends were intended to be paid by applying them on premium notes, of which the company held a large amount, and it was their practice to apply the dividends in this way at the maturity of the notes. The premium notes were not included in the return of its cash capital made by the company. Held: That these unpaid dividends were not to be deducted. from the cash capital in ascertaining the amount which was to be the basis of the tax. ”
Here it is said that the. premium notes were not included in the return of the cash capital. The dividends were intended to be applied against the premium notes. They could not, therefore, be deducted from the cash capital of the company as long as the company failed to return the premium notes as cash capital.
In the present case there are no premium notes, but the policies provide for the payment of premiums, which are as much assets' of the company as the premium notes are in a case where premiums are evidenced by notes outside of the policies. But the premiums to be paid on policies are not in any way reduced by the dividends declared out of this fund.
We do not see any reason, therefore, why these dividends should be deducted from the cash capital of the company, that would not apply with equal force to the dividends in the Connecticut case. The court in that case in the opinion, page 532, say that accrued losses should be deducted from the cash capital, and—
“At first blush it would seem that dividends declared should also follow the same rule. If they were declared and payable in.such manner as to reduce the cash capital, they should of course be deducted. The general rule is, that a dividend once declared becomes a debt due to the person entitled to it and an obligation from the corporation declaring it. Such would always be the case where there was no contract between the parties modifying their respective rights and liabilities. In this case the facts are such that it is difficult to see how it is possible *263 that the dividends in question could reduce, or in any way affect, the amount of cash capital.
“It is found that the dividend in question was intended to” cancel, and did in fact cancel, the premium notes, and that the practice of the company, both for their own convenience and that of their policy holders, is to pay the dividends m this way, at the maturity of the premium notes. The dividends then are'.not to be paid as the losses are paid; they do not come out of the cash capital at all, but out of the notes. The parties so understand it, and contract with reference to it. The premium notes constitute no part of the cash capital. It is found that in this case these notes amount to $3,010,123.80, and that they are not included in the return made by the defendants. If they were included, then the dividends should be deducted. Had the dividends declared canceled the entire amount of premium notes, the cash capital to be returned would have been the same, though it is obvious that the non-taxable assets of the company would have been by so much diminished.
“ITow is it then that dividends which do not come out of the cash capital in fact, can be deducted for the purpose of reducing taxation? If the dividends declared, cancelling the premium notes, should be considered equivalent to a collection of those notes, then, if the amount so collected should be returned as a part of the cash capital, the dividends would be properly applied to reduce it. This would be merely adding the amount of the dividend and then subtracting it again; but in the case before us the amount collected by dividends upon the premium notes was never added to the capital as returned, and to deduct the amount would be simply to withhold so much from taxation.”
In the case at bar this dividend fund is not credited in satisfaction of premiums; it is not paid to the policy holders when declared ; no part of it is taken out of the assets of the company or paid to any policy holder until his policy matures. It only becomes payable to the policy holder by maturing his policy at a date earlier than it would otherwise mature, but until the policy has so matured it remains with the company, and is invested by it, and profit accumulates upon it. We are of opinion that it remains a part of the .cash capital — assets of the company. Nothing in lieu of it is ever returned for taxation; it remains a permanent fund not returned for taxation, subject to be abolished as a separate fund at the pleasure of the company.
If we are not correct in our view that this fund remains while in the hands of the company a part of the cash capital of the *264 company, then certainly it is held by the company in trust for the policy holders whose policies shall mature.
Maxwell c& Ramsey, for plaintiff in error.
Alfred B. Benedict, contra.
Not all of the policies outstanding at any given date will mature. Some will be allowed to lapse. Whose policies now in force will mature and whose will lapse, can not now or at any given time be known. The policy holders are a class, members of which are scattered far and wide.
If this fund should be deemed a trust fund for the policy holders whoever and wherever they may be, and be paid to the holders of the policies in force, not at the date of the declaring of each dividend, but at the date of the maturing of each policy, then we know of no reason why as such trust fund in the hands of the company it should not be returned for taxation.
So that whether we regard it as part of the cash capital of the company, or as a fund set apart by the company and held in trust by it in the manner aforesaid for persons living in different parts of the country and persons who can not be definitely known, we are of opinion that it must be subject to taxation in this state, both on principle and authority.
It seems quite clear to us, however, that it is taxable as part of the cash capital of the company. In the view we have taken of the nature of this fund, namely, that it is a fund established by the company at its own will, and no part of the statutory reserve fund, and not a part of any reserve fund created as such, or created because of any existing necessity of the compaijy, or in pursuance of any contract with the policy holders, we find it unnecessary to determine whether as a matter of law the statutory or any other proper reserve fund of an insurance-company is taxable.
Without passing on that question, therefore, and for the reasons aforesaid, we are of the opinion-that the judgment of the court below, that the accumulated dividend fund is also taxable and that the tax placed upon the duplicate by the auditor in this case was so placed by him in the proper exercise of his power, should be affirmed.

 Affirming Hynicka, Treasurer, v. Union Central Life Insurance Company, 4 N. P.—N. S., 297.