## INTER-ISLAND STEAM NAVIGATION COMPANY *v.* JONATHAN SHAW, Tax Assessor.

APPEAL FROM TAX APPEAL COURT, FIRST DIVISION.

SUBMITTED JANUARY 12, 1897.    DECIDED FEBRUARY 13, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

Under Sections 17 and 68, Act 51, Laws of 1896, which provide that real and personal property, or several classes or kinds or parcels of real or personal property, when combined and made the basis of an enterprise for profit, shall be assessed as a whole, taking into consideration the net profits, gross receipts, and running expenses of the enterprise, and, in the case of a corporation, the market value of its stock, and all other facts bearing upon the value of the property; held, that the earnings, and, in the case of a corporation, the market value of the stock, should not be taken as the sole or conclusive test of the value of the property, but that they are nevertheless important factors in determining such value, whether the property consists chiefly of real estate as in the case of a railroad company, or of personal estate, as in the case of a steamship company.

Property so combined may as a whole be of much greater value than the sum of the values of its several parts regarded separately.

In this case, the assessment of the plaintiff's property, consisting chiefly of steamships, ship chandlery, coal and real estate, as a whole at $471,300, is sustained, though the plaintiff returned the aggregate value of its property, regarded as separate items, at $269,590.48.

Proof, if made, that the assessor did not proceed in the same way in estimating the value of the property of all corporations, would not be sufficient to invalidate the entire assessment on the ground of fraudulent discrimination.

OPINION OF THE COURT BY FREAR, J.

By the provisions of the general internal tax law of June, 1896, a portion thereof was to take effect upon publication, and the remainder December 31, 1896; and the prior general internal tax law, that of 1892, was repealed, the repeal to take effect as to a portion of the law upon the publication of the new law, and as to the remainder on said December 31, 1896. Under these provisions the statutory law governing this case, which relates to the assessment of the plaintiff's property as of July 1, 1896, consists of the law of 1892 (Ch. 61) except Section 26 thereof, and Sections 17, 68, 82, 83, 84 and 85, of the law of 1896 (Act 51). The principal changes introduced by these sections of the new law are: (1) Whereas previously the special tax appeal court (consisting of three persons) created by the tax law, had been the only court of appeal in assessment cases, now a further appeal, (on both the law and the evidence) is allowed to the Supreme Court from decisions of the special tax appeal court; and (2) Whereas previously, in practice and by general understanding rather than by the express provisions of the statute, real and personal property, or several classes or kinds or parcels of real or personal property, when combined and made the basis of an enterprise for profit, had been assessed separately, now it is expressly provided that such property shall be assessed as a whole. The principal point involved in this case is the construction and effect of this last mentioned provision of the new law. Each law, the old and the new, provides for a tax upon real property and upon personal property, and defines what is included under each of those terms. The sections that prescribe the methods of ascertaining the value of the property, which are the sections in question in this case, are the following:

"Section 26. (Old law, now repealed.) The full cash value of all real property and all personal property and of the interests of any person in real or personal property, within the

meaning of this Act, shall be estimated at a sum which such real or personal property or such interest therein might reasonably be expected to bring at a sale by public auction for cash. Provided, always, that when any real estate or house is leased or rented, the sum of eight years' rental shall be the assessment value of such real estate or house, unless such valuation shall be manifestly unfair or unjust.

"Section 17 (new law). All real and personal property and the interest of any person in any real or personal property shall be assessed separately as to each item thereof for its full cash value.

Provided however, that in all cases where real and personal property, or several classes or kinds or parcels of real or personal property respectively, are combined and made the basis of an enterprise for profit, the combined property forming such basis of such enterprise for profit, shall be assessed as a whole on its fair and reasonable aggregate value.

In estimating the aggregate value of each such enterprise for profit, there shall be taken into consideration the net profits made by the same, also the gross receipts and actual running expenses; and where it is a company being a corporation whose stock is quoted in the market, the market price thereof, as well as all other facts and considerations which reasonably and fairly bear upon such valuation.

In ascertaining the aggregate value of the property constituting an enterprise for profit for the purpose indicated by this section there shall be excluded therefrom the value of shares in other Hawaiian corporations held or owned by such enterprise, and all property on which specific taxes are levied.

And further provided, that when any real estate or house is leased or rented, the sum of eight years' rental thereof shall be the assessment value of such real estate or house, unless such valuation shall be manifestly unfair or unjust.

"Section 68 (new law). If any of the property by this Act directed to be returned shall consist of real and personal prop-

erty, or several classes or kinds or parcels of real or personal property, respectively, which are combined and made the basis of an enterprise for profit, the person making the return shall give a detailed description of such property and state the aggregate value thereof, taking into consideration the net profits made by the same, also the gross receipts and actual running expenses, and where it is a company, being a corporation whose stock is quoted in the market, the market price thereof, as well as all other facts and considerations which reasonably and fairly bear upon such valuation.

He shall state what, if any, the net profits as well as the gross proceeds and actual running expenses of such enterprise have been during the twelve months next preceding; and if known, what sale or sales of stock or other interest in such enterprise have taken place during the twelve months next preceding, giving the name of the person selling, the person buying, the number of shares or proportion of interest sold upon each sale; and, when known, the purchase price thereof."

The plaintiff, a corporation, returned its tangible property, consisting chiefly of steamships, ship chandlery, coal and real estate, at $269,590.48, as the aggregate value of the combined property forming the basis of its business enterprise. This amount, however, was merely the sum of the values of the different items valued separately as under the old law. The assessor raised this to $471,300. This amount he obtained according to his testimony before the tax appeal court, by taking the capital stock (then consisting of 4250 shares, of the par value of $100 each) at its market value, $145 per share; reducing this fifteen per cent. as an allowance for a probable reduction in the price of the shares if sold in large quantities; and then making a further reduction of ten per cent. as a means of equalization, with reference to the property of other corporations; he also considered the gross receipts ($618,745.07), the running expenses ($556,686.58), the net earnings (over $62,000, or over fourteen per cent. on the capital stock) and

the dividends paid (twelve per cent.) during the year then just ended; also the dividends paid during the preceding seven years which aggregated the exact amount of the capital stock ($425,000); he also states that he considered the principal real and personal property other than the steamships. The tax appeal court sustained the assessment made by the assessor.

It is contended for the plaintiff that the new law like the old, in so far as it bears upon the present case, provides for a tax upon property only; that a business or enterprise is to be distinguished from the property which forms its basis, in that the value of the former may depend upon a great many things besides the property, as, for example, upon labor, skill, experience, rapid turning over of capital, want of competition and especially good will; that all these elements combine to produce the earnings and determine the market value of .the stock, as well as the value of the enterprise, so that although the earnings and the market value of the stock may be regarded as fair criteria of the value of the enterprise, they should not be considered in ascertaining the value of the property, since this is only one of many elements which go to determine the amount of the earnings or the market value of the stock or the value of the business; that not only is this a truth aside from the statute, but that the statute in question itself recognizes it, for it expressly provides for the assessment of the property, and that portion of it (the third paragraph of Sec. 17) which directs the consideration of the earnings and the market value of the stock, does so only for the purpose of estimating the value of the enterprise; that the assessor by considering chiefly, almost entirely, the earnings and the market value of the stock, proceeded on a wrong principle and really estimated the value of the enterprise, and erroneously took this as the value of the property, as if there were no distinction between the two. It is also contended, that the return made by the plaintiff is correct, not only because "aggregate value," at which combined property is required by the statute to be assessed, means merely

the sum or total of the values of the different parts valued separately, but also because as a matter of fact aside from the language of the statute one parcel of combined property, (at least if it is manufactured personal property like a steamship and so capable of indefinite multiplication) has no greater value as a part of a whole or because of its use in connection with the other parts than it would have taken by itself.

We may readily concede that, as contended for the plaintiff, the sections in question as well as numerous other portions of the statute, show that the legislature intended to tax only the property forming the basis of an enterprise for profit, and did not intend to tax the enterprise as such itself. We may also concede that there may be a great difference between the value of an enterprise and the value of the property which constitutes its basis, especially if such property is considered not as a whole but as a mere aggregate of isolated parts; also that the earnings or the market value of the stock of an enterprise may not alone be a correct criterion of the value of the property which forms its basis. It is easy to see that owing to good will, skillful management, respectability and popularity of the proprietors, lack of competition, or other causes, the capitalized earnings or even the market value of the stock of an enterprise may greatly exceed the value of its tangible property, especially if regarded as separate items; or, on the other hand, that the market value of the stock may be much less than the value of the tangible property, whether regarded as a whole or as separate items, as for instance, if the enterprise were greatly in debt, for then the market value of the stock would represent only the excess of the value of the enterprise over the indebtedness.

But while neither the earning power nor the market value of the stock of an enterprise is necessarily alone a correct criterion of the value of the property, it by no means follows that these may not be considered, with other things, in determining the value of the property. As well might it be said that the cost of production of personal property or the price paid for real prop-

erty, which certainly is often very different from the value of the property, cannot be considered with other things in estimating the value of the property. And this we take to be the distinction recognized in the numerous cases examined by us, namely, that the earnings and the market value of the stock of a corporation cannot be regarded as alone furnishing a correct criterion of the value of the property in all cases, but may be considered in estimating the value of the property, whether tangible property alone, or both tangible and intangible, and that the weight to be given to these considerations depends upon the particular circumstances of each case. In some cases these considerations taken alone, may be the best guide to the value of the property, while in other cases they may be of little importance. This is also the rule recognized by our statute, which provides that "there shall be taken into consideration" not only these facts but also "all other facts and considerations which reasonably and fairly bear upon such valuation." It is true, these considerations are referred to in Section 17 (third paragraph) only in connection with the value of the "enterprise," but we have no hesitation in holding that "enterprise" as here used was intended to mean "the property forming the basis of an enterprise" as in the preceding paragraph, or "the property constituting an enterprise" as in the succeeding paragraph; this is also obvious from the language of Sec. 68 which requires the person making the return to set forth the aggregate value of the combined property of the enterprise, after taking these and other things into consideration. This is holding, not that the words "combined property" in other parts of these sections were intended to mean "enterprise" but that "enterprise" in the third paragraph of Sec. 17 was intended to mean "combined property of an enterprise." But even if the statute did not expressly so authorize or direct, still the earnings and the market value of the stock might be taken into consideration in estimating the value of the combined property.

The questions of greatest difficulty in this case are whether

the "aggregate value of the combined property" of an enterprise, though consisting chiefly of personal property capable of indefinite multiplication, may materially exceed the sum of the values of the parts taken separately, and if so, how far the earnings or the market value of the stock may be considered in determining such value. In the first place, the word "aggregate" as here used in the expression "aggregate value" does not mean merely "sum" or "total." That is not necessarily its only meaning in common usage, and in this statute the words "as a whole" used in the same clause show that the word "aggregate" was intended to qualify the word "value" so as to make it mean the value of the property as a unit and not merely as a collection of separate items. This is obvious also from other portions of these sections of the statute. In the second place, it is evident that the legislature regarded the value of the property as a whole as materially greater than the sum of the values of the parts considered separately. In the third place, it is evident that the legislature thought that the earnings and, in the case of a corporation, the market value of the stock, of an enterprise, were important considerations in determining the value of the property as a whole. These views of the legislature should be given effect, if possible, and, in our opinion, they are well founded in reason and amply supported by authority.

In considering the cases that bear upon the subject, it is important to keep in mind the different classes of statutes under which they were decided. The most common form of statute is, of course, that which, like our former statute, simply imposes taxes on property, without any provision that combined property shall be assessed as a whole. But in a number of the United States in recent years, as a result of a belief that the properties of large enterprises, especially corporations, possess a considerable value from the very fact of their magnitude or the relations of their different parts to each other, and that such increment of value escapes taxation under the ordinary statutes,

various changes have been introduced with a view to subjecting such increment to its fair share of taxation. The various factors, sometimes called the intangible property, which go to make up this increment of value, are commonly included under the term "franchise," though we doubt the propriety of giving so wide a meaning to this term. One form of statute adopted to subject this increment to taxation is that which imposes what is called a "franchise" or "privilege" tax. This is a tax upon a corporation, as such, as an entity, and is analogous to a tax upon a person, or business or occupation, as such, like a poll tax or a license tax under Hawaiian law. Not being a property tax, it may be somewhat arbitrary in amount, and is sometimes made a percentage of the earnings, or of the market value of the capital stock less the value of the tangible property assessed separately, and so, while not a property tax, it is made and is considered as practically equivalent to a tax on the value of the intangible property. Thus the tax on the tangible property and the franchise tax together are in most cases substantially equivalent to a tax on the entire property. In such case, of course, the earnings, or the market value of the stock less the value of the tangible property, may be made the sole measure of the aggregate amount of the tax. A second form of statute adopted for the same purpose is one that imposes a tax upon both the tangible and the intangible property, or, what is considered the same thing, upon all the property, including the franchise. This is a property tax, a tax upon the value of the property; and the earnings and market value of the stock, although not regarded as the sole test of the value of the property, are nevertheless regarded as very important considerations in determining that value, in fact they are regarded as the best guide. See *State Railroad Tax Cases*, 92 U. S. 575. This is on the assumption that in the case of most business enterprises a sale of all the property, tangible and intangible, would carry with it substantially all that went to make up the value of the enterprise, and that the market value of the stock is the best

evidence of that value, because it is determined by the judgment of those best able to judge—those who actually buy and sell the stock. A third form of statute is one which, like our present statute, directs that the combined property shall be assessed as a whole. This is regarded as practically equivalent to the second form above mentioned, on the ground that the words "as a whole," or their equivalent, are intended to mean that the property is to be regarded with reference to the connection of its different parts, its earning capacity, and the uses to which it is put, in other words, not as passive, but as active, property,—the property of a going concern. The difference between this and the second form above mentioned is that this regards the intangible factors as incidents of the tangible property, or the tangible property as increased in value by the intangible factors, while that regards the intangible factors as property in themselves, though closely, or inseparably, connected with the tangible property.

The cases relied on for the plaintiff, of which the principal are: *Chicopee v. Hampden*, 16 Gray 38; *Com. v. Hamilton Co.*, 12 Allen 298; *Com. v. Cary Co.*, 98 Mass. 19; *People v. Dolan*, 126 N. Y. 166; *People v. Coleman*, Ib. 433; *Porter v. Rockford Co.*, 76 Ill. 561; *Coite v. Conn. Co.*, 36 Conn. 512; *State v. Metz*, 31 N. J. L. 378; *De Witt v. Hays*, 2 Cal. 463; were none of them decided under statutes like ours, and we find nothing in them contrary to the principles above set forth. We need comment on only one of them, the one most relied on for the plaintiff, *People v. Dolan*, 126 N. Y. 166. In that case the court held that the portion of a telegraph line in a particular town should be assessed as isolated property, not as a part of a whole, or as used for telegraph purposes or with reference to connections or productive capacity; that, therefore, the market value of the stock was not a proper test of the value of the property, but that, since it was personal property capable of infinite production, the proper measure of its value was its cost of production. This case is relied on to show that

the property of the plaintiff in the case at bar, being chiefly personal property, must be considered as made up of isolated items, and that their cost of production is the proper test of their value.    But in our opinion, the decision rather supports the opposite conclusion.    For the statute under which it was made expressly provided that the portion of a telegraph line in any town should be assessed in the same manner as the property of individuals, and another statute provided for a tax on the business or franchise.    The statute, therefore, was emphatically one that imposed a separate as distinguished from a combined property tax.    And yet the court quoted with unqualified approval former New York decisions which held that the portion of a railroad in a town should be assessed as part of a whole and that in making such assessment "its earning capacity is a most important feature."    The court then distinguished between telegraph and railroad lines on the ground that the former were personal property and held that on that account a portion of a telegraph line should be assessed as isolated property.    But, note, first, that the court stretched the separate property tax rule to a combined property tax rule in the case of a railroad line, and merely refused to do so in the case of a telegraph line; secondly, it did not even intimate that the combined property tax rule could not be applied to telegraph lines, if prescribed by statute, but, on the contrary, it strongly intimated that if the business or franchise of a telegraph company were not already taxed under another statute, it might extend the combined property tax rule to telegraph lines also, oven under a separate property tax statute; and thirdly, the court were of the opinion that if the property were to be assessed as a whole or as a part of a whole, it should be assessed with reference to its connections, its productive capacity and the market value of the stock.

We can see no difference in principle between the case of a railroad company and the case of a telegraph company for the purposes of assessment under a statute which requires the

entire property in each case to be assessed as a whole. And the authorities not only sustain this view but extend it to cases of express and car companies, whose property consists mostly of personal property and is not even physically connected as in the case of a railroad or telegraph line. The difference is one of degree, not of principle.

An Ohio statute provided for a tax upon the property of telegraph, telephone and express companies, without referring to the franchise or intangible property at all. It required the companies to return the amount of their capital stock, the par and market value of the stock, a statement in detail of their property, &c. It also provided that in determining the value of such part of the property as was in the State of Ohio, the assessors should "be guided by the value of the entire capital stock" of the companies and "such other evidence" as would enable them to arrive at the value of the "entire property" of such companies within the state, in the proportion that the same bore to the "entire property" of the companies as determined by the value of their stock and other evidence. Thus the statute was substantially the same as ours, so far as this case is concerned. It differed from our statute in this, (1) that it was confined to certain classes of corporations, instead of extending as our statute does to all enterprises for profit, and so was open to an argument against its constitutionality under the Ohio constitution, and (2) that it required the market value of the entire stock of a company having property in different states to be considered in determining the value of that part of the tangible property that was in one state, while our statute requires this only in determining the value of the entire property. In other words, the Ohio statute went further than our statute, and yet, as we shall see, it was fully sustained.

In *Western Un. Tel. Co. v. Poe,* 61 Fed. R. 449, as in the case at bar, the assessors in determining the value of the property took the value of the stock as a basis, and but lightly regarded the intrinsic or cost value of the property. The Circuit

Judge, Taft, held the tax invalid on the ground that the market value of the stock was no criterion of the value of the tangible property, since it depended in part on good will, earning capacity and other intangible things not taxable themselves, and that, since the statute required the value of the property of only certain classes of companies to be determined in part by the value of the stock, it violated the constitutional provision which required property to be taxed by a uniform rule. This was the case of a telegraph company. In *Adams Express Co. v. Poe*, Ib. 470, the assessment, under the same statute, against an express company, was over $460,000, although the company returned its property in the state of Ohio as consisting only of isolated parcels of land used for stabling purposes and valued at about $25,000, and personal property consisting of office furniture, tools, horses and wagons, valued at about $53,000. Thus it will be seen that the assessment was about the same as that in the case at bar, although the aggregate value of the property was returned at less than one-third the amount returned in this case. The market value of the stock also was about the same as in the case at bar. The same Judge, Taft, decided this case as he did the telegraph case, remarking that "the earning capacity of an express company, which largely determines the value of the shares of its capital stock, is even more dependent than the earning capacity of a telegraph company upon its good will, skill and honesty of its employees, and upon its franchises and other rights and privileges not property."

These decisions were upon demurrers, but before final decrees were entered the same questions were raised in the Supreme Court of Ohio, in *State v. Jones*, 51 Oh. St. 492, the case of an express company, and that court came to the opposite conclusion and sustained the law. It held that the statute did not proceed on the principle that the value of the entire property was the same as the value of the capital stock; but merely required the value of the stock to be taken as a guide, or *datum;* it held also that in estimating the value of the tangible

property as a whole, it was to be considered as affected by the intangible factors, though these were not taxable themselves. The court said, "It is contended that when the value of the shares of the capital stock of a corporation is augmented through the franchise, good will and successful management of the business of the concern, such value should not avail to add to the true value in money of the tangible property of the corporation for the purpose of taxation. * * * If the component parts of the whole machinery and apparatus employed in carrying on a trade or manufacturing business were sold separately, at public or private sale, to different purchasers, the market value of the capital stock might play a very unimportant part. But the property of a corporation may be regarded in the aggregate, as a unit, an entirety, as a plant designed for a specific object; and its value may be estimated not in parts, but taken as a whole. If the market value—perhaps the closest approximation to the true value in money—of the corporate property as a whole, were inquired into, the market value of the capital stock would become a controlling factor in fixing the value of the property. Should all the stockholders unite to sell the corporate plant as an entirety, they would not be inclined to sell it for less than the market value of the aggregate shares of the capital stock."

* * * "If by reason of the good will of the concern, or the skill, experience, and energy with which its business is conducted, the market value of the capital stock is largely increased, whereby the value of the tangible property of the corporation, considered as an entire plant, acquires a greater market value than it otherwise would have had, it cannot properly be said not to be its true value in money within the meaning of the constitution, because good will and other elements indirectly entered into its value. The market value of property is what it will bring when sold as such property is ordinarily sold in the community where it is situated; and the fact that it is its market value cannot be questioned because attrib-

uted somewhat to good will, franchise, skillful management of the property, or any other legitimate agency."

In consequence of this decision, Circuit Judge Taft reversed his decisions upon demurrer above mentioned, and sustained the validity of the law, without however stating whether he was convinced of the correctness of the reasoning of the Ohio court, and upon a further hearing upon the question of fact as to whether the assessors had followed the law as construed by the Ohio court, he held that they had "kept well within the law." See *Sanford v. Poe*, 69 Fed. R. 546, 547. On appeal however, in the express company case, to the Circuit Court of Appeals, consisting of another Circuit Judge and two District Judges, the court followed the Supreme Court of Ohio with the utmost approval. *Ib.* And upon the question whether it made any difference that the property of an express company was mainly personal property and did not form a continuous line as in the case of a railroad company, the court said: "The value of property depends in a large degree upon the use to which it is put. If a railroad may be valued at a unit, rather than as a given number of acres of land plus so many tons of rails and so many thousands ties and a certain number of depots, shops, etc., there is no sufficient reason why the property of an express company should not be treated as a unit plant. * * * That an express company owns no line of railway, and operates no railroad, does not prevent the value of its property from being affected by the relation of each part to every other part, and the use to which a part is put as a factor in a unit business. The same court decided the same way on the appeal in the case of the telegraph company, *Western Un. Tel. Co. v. Poe*, 69 Fed. Rep. 557. On further appeals to the Supreme Court of the United States, the decisions of the Supreme Court of Ohio and the Circuit Court of Appeals were sustained, if we may rely on a telegraphic communication to this effect dated the 1st of this month and published in the San Francisco papers just received. The following recent decisions

of the Supreme Court of the United States also hold the same way under somewhat similar statutes: *Pittsburgh Co. v. Backus,* 154 U. S. 421, and *Cleveland Co. v. Backus,* Ib. 439, railroad cases, under an Indiana statute; *Western Un. Tel. Co. v. Taggart,* 163 U. S. 1, a telegraph case, under the Indiana statute; and *Pullman's Palace Car Co. v. Pennsylvania,* 141 U. S. 18, under a Pennsylvania statute, the case of a car company running its cars through the United States, but not owning the railroads on which they ran.

We therefore hold, against the main contentions for the plaintiff, that, under the present statute in valuing combined property as a whole, not only may the earnings and, in the case of a corporation, the market value of the stock, be taken into consideration, but that these are very important matters to be considered, and furnish in most cases the best *datum* to start from; also that the cost of production of the several parts is not the proper test of the value of such combined property even when it consists chiefly of manufactured personal property. From this it follows that the return made by the plaintiff cannot be sustained. Whether the assessment made by the assessor and sustained by the tax appeal court is correct or not, is not so easy to say, but, on the whole, we are of the opinion that we cannot disturb it on the evidence before us. It is true, the earnings and the market value of the stock should not be taken as the sole or conclusive test in the valuation of the property, and that as required by the statute "all other facts and considerations which reasonably and fairly bear upon such valuation" should "be taken into consideration." But in this case the assessor took into consideration various other matters besides the earnings and the market value of the stock, and the plaintiff was unable at the hearing before the tax appeal court, although the attempt was made, to show that the assessor omitted to consider anything that necessarily would have led to a different result.

There remains to be considered a question of the admissi-

bility of evidence. Plaintiff's counsel asked the assessor, as a witness, "How generally have you assessed Hawaiian corporations by multiplying their capital stock by the market value thereof and deducting fifteen per cent. and then ten per cent.?" The court disallowed the question as incompetent and irrelevant. Plaintiff's counsel contends that it was relevant because, if the rule had not been generally applied, the entire assessment would have been invalidated, on the ground of inequality and discrimination. *First Nat. Bank v. Lindsey*, 45 Fed. R. 619, is relied on. The case cited differed so in its facts from the case at bar that it cannot be regarded as an authority in support of the contention made. The assessor was not obliged to follow the same course as to all corporations. As above decided, the market value of the stock could not be made the sole test in all cases. The main question in this case was whether the assessment of the plaintiff's property was correct, and, if it could be proved that the assessor did not follow the same course in all cases, this would not show that he did not follow the right course in this, or that he did not follow the right course in other cases, much less that he was guilty of fraudulent discrimination.

The decision of the tax appeal court is sustained and the appeal dismissed.

*Kinney & Ballou*, for plaintiff.

*Thurston & Stanley*, for defendant.