# IN RE TAXES HAWAIIAN COMMERCIAL AND SUGAR COMPANY.

## No. 1397.

### APPEAL FROM TAX APPEAL COURT SECOND CIRCUIT.

ARGUED OCTOBER 23, 1922.                    DECIDED JANUARY 4, 1923.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

TAXATION—*valuation of enterprise for profit—capitalization of profits.*

The consideration of the average annual profits of the taxpayer during an immediately antecedent period for the purpose of determining the cash value of the combined property as a whole of an enterprise for profit is predicated upon the assumption that the

taxpayer will enjoy in the future approximately the same profits as it has in the immediate past. But where it appears that included in such antecedent period are instances of excessive profits or losses due to conditions over which the taxpayer had no control and which are not likely to occur again it is unsafe to use the average annual profits during that period as a criterion of the future.

SAME—*same—same*.

While the present and anticipations for the future may be sufficient for determining the cash value of the combined property as a whole of an enterprise for profit in the absence of any evidence tending to show what rate of capitalization should be employed the method of computation fails.

SAME—*same—consideration of market price of stock when taxpayer a corporation*.

Where during the year immediately prior to the taxation period due to war and post-war conditions and the natural reaction therefrom the world's price of sugar was excessively high, followed by a sharp decline continuing until the taxation period, and with the fluctuation in the price of sugar there was a corresponding fluctuation in the market price of the company's stock neither the average market price of the company's stock during the preceding year nor the market price at or during the month prior to the taxation period is of any value in estimating the cash value of the combined property as a whole of an enterprise for profit.

OPINION OF THE COURT BY PETERS, C. J.

This is an appeal by the tax assessor of the second taxation division (County of Maui) from the judgment of the tax appeal court of that division holding that the aggregate value of the combined property forming the basis of an enterprise for profit conducted by the taxpayer on January 1, 1921, was $14,000,000. The taxpayer in the first instance returned its property at $11,000,000. The tax assessor assessed the property at $16,900,000. The taxpayer appealed to the tax appeal court from all sums in excess of $14,000,000.

The parties by stipulation before the tax appeal court agreed upon the cash value of the separate items of tangible assets combined and forming the enterprise of the

taxpayer with the exception of the two growing crops to mature in 1921 and 1922, respectively, and 14,500 acres of cane land owned in fee.

First, as to the value of the 1921 and 1922 crops. The taxpayer claimed that the value of the 1921 crop on a cost basis was $1,878,291.22, on a cash value basis $2,206,960; that of the 1922 crop $944,072.05 on a cost basis and $1,125,533.81 on a cash value basis.

The cash value of a growing crop for purposes of taxation is not its cost of production at the taxation period. *Re Assessment Taxes Jas. B. Castle,* 15 Haw. 1. Cost figures will not be considered further than evidence thereof may be material in estimating cash value. *I.-I. S. N. Co. v. Shaw,* 10 Haw. 624, 629, 630.

The taxpayer computed the cash value of the 1921 crop upon the basis of a hypothetical purchase from independent growers of the estimated yield at 5.32, the price of sugar obtaining January 1, 1921, plus bonus, less cost of bringing the crop to maturity and less cost of harvesting, discount and territorial taxes. To the contrary of being a hypothetical case the figures employed are the result of past experiences of the taxpayer.

The tax assessor on the other hand adopted the taxpayer's estimated 1921 harvesting, manufacturing and marketing costs totaling approximately $35 and estimated the value of the 1921 crop upon those figures less an allowance for contingencies of $5 a ton. This method is subject to criticism due to the omission of fixed charges properly chargeable against growing crops. The tax appeal court took the same figures as the assessor except that it made an allowance of $10 a ton for contingencies and fixed the value of the 1921 crop at $2,750,000. The tax assessor and the tax appeal court computed the value of the 1922 crop at one-half the value of the 1921 crop following the rule enunciated in *Re Taxes Waiakea Mill Co.,*

25 Haw. 628, the court allowing an additional amount of $2.50 per ton to cover contingencies not figured in the 1921 crop. This resulted in fixing the aggregate value of both the 1921 and 1922 crops at $4,000,000.

Obviously the only question of difference between the tax assessor and the taxpayer is the allowances for contingencies. The taxpayer advances many reasons why the allowances were proper. While "too much prominence should not be given to forebodings of disaster which may befall the growing crop" we do not feel that the additional allowances were excessive in view of all of the facts and circumstances of the case. Post-war conditions obtained and the future was problematic. Although the price of sugar on January 1, 1921, was 5.32 it appeared at that time doubtful if the average for the year would be in excess of five cents. Indications were that the price would be below five cents. The crop was short and the margin of profit due to increased cost and the shortage and insufficiency of labor small. We cannot say that a similar allowance should be made in all cases but elements of expense properly chargeable against both crops, for which an allowance should have been made, were not considered by the assessor and more than offset any liberality which might be claimed in such allowance. The record fails to disclose any substantial reason for disregarding the value as fixed by the tax appeal court and with due regard to all of the facts and circumstances of the case we feel that the cash value as determined by the tax appeal court for the 1921 and 1922 crops was fair both to the taxpayer and the assessor.

We deem it necessary, however, at this time to state our dissatisfaction with any abstract rule to the effect that a succeeding immature crop is worth one-half of the preceding mature crop at the taxation period. This method of computation was urged by the tax assessor and adopted

by the tax appeal court. Where sustained by · evidence this method of determining the value of an immature crop might be proper. But the assessor evidently considered the rule as applicable in the abstract in all cases. The state of the record, however, does not require decision on this point and in the absence of any evidence in support of any other or different method which might appeal to this court as the proper method of ascertaining the value of an immature crop we can do nothing but sustain the findings of the tax appeal court in that regard.

As to the value of cane lands. The taxpayer claimed and offered evidence in support thereof, that the average value of its cane lands as a whole, good, bad and indifferent, was about $125 an acre. The assessor contended for a valuation of $500 an acre and in support of his contention offered evidence of sales of cane land in the immediate vicinity. In cases where cane lands were converted into or exchanged for town lots prices of $500 an acre were disclosed. Evidence of sales of cane land as and for such varied from $100 to $200 an acre. Comparison was made with assessments of other plantations judicially fixed for former years, particularly that of Onomea Plantation (25 Haw. 278). Onomea differed from the taxpayer in being a non-irrigated plantation and situated on the Island of Hawaii and the values of lands fixed in that case without other evidence showing similarity existing at the taxation period are of no evidentiary value. *Re Taxes Wailuku Sugar Co.,* 21 Haw. 352, 359. The tax appeal court failed to find the cash value of the cane land. To determine the amount which would represent the ˙cash value of the cane lands the tax appeal court deducted from the assessment of $14,000,000, acquiesced in by the taxpayer, the aggregate of the admitted values of tangible assets and the value of the growing crops as found by it and then characterized the result as "excessive." It failed

to say what it considered to be the cash value of the cane lands. In this it was in error. To hold that a certain figure is excessive is not sufficient. It should have found the actual cash value. Nor was the assessment as a whole, of which the taxpayer approved, necessarily the aggregate of the cash value of the several items of its tangible property. In the absence of such a finding, therefore, it devolves upon this court to determine the same.

We feel that the book values of the cane land as carried upon the books of the company are the most persuasive of cash value. In 1902 when the old Puunene mill was demolished it became incumbent upon the taxpayer to readjust the values of its tangible assets. At that time it appraised its real property and credited that item upon its books at the sum of $3,692,255. Attempt was made by the taxpayer to discount the evidentiary value of its books in this regard by explaining that the readjusted value did not reflect the real value. It would appear, however, from an analysis of the appraisement so made at that time, contained in an exhibit offered by the taxpayer, that while the value of the real property was increased by $2,764,254.90 the actual aggregate increase upon all its tangible assets was only $877,581.84. Since 1902 the taxpayer has consistently returned its real property at its book value and it is reasonable to assume that, even though, as claimed by the taxpayer, the reappraisement was excessive at the time it was made, with the gradual appreciation in sugar securities the taxpayer believed at the taxation period that its books truly reflected the cash value of its real property. In the tax return of the taxpayer the real property of the company is returned at $3,689,-373.50 and hui shares at $11,678.80. The parties stipulated that its lands other than cane lands had a cash value of $595,500, so that on that basis the cash value of the 14,500 acres of cane land would be $3,105,552 or approxi-

mately $214 an acre, and we so find.    These figures we believe to be conservative.

Considering the situation therefore from the standpoint of the actual cash value of the respective properties combined and forming the basis of the taxpayer's enterprise we have the following results:

Stipulated cash value of tangible
   assets other than growing crops
   and cane lands................$ 5,499,299.34
Stipulated value of lands other than
   cane lands ..................    595,500.00
Growing crops ..................  4,000,000.00
14,500 acres of cane land.........  3,105,552.00
                                             ——————————
      Total....................$13,200,351.34

The question arises, however, whether or not these properties in combination are worth more than the aggregate of their several respective cash values.  Two tests have been employed to ascertain this value, one, the capitalization of profits method, the other, the stock sale method.    Both methods in the past have received the careful consideration of this court and the reasons underlying their application need no repetition here.   Suffice it to say in view of the contentions of the taxpayer we take occasion to again express our approval of the same.

The taxpayer contends that due to the conditions existing during the world's war, including that period thereof in which the United States was a cobelligerent, and due to the abnormal post-war conditions, especially during the year 1920, both tests are of no value and should under all the circumstances be discarded and all of the real and personal property of the taxpayer should be assessed separately as to each item thereof for its cash value.  In this we agree except that from the inability to utilize in this case the average annual profits of

the enterprise as a basis of capitalization of its earning power it does not necessarily follow that in future cases the capitalization method must be abandoned and the taxpayer assessed upon the cash value of its property considered separately.

The capitalization of profits test is predicated upon the assumption that the taxpayer will enjoy in the future approximately the same profits as it has in the immediate past. And under such circumstances this court has approved a capitalization of average annual profits of an immediately antecedent period at a rate based upon present and anticipated future conditions. But where it appears that included in such antecedent period are instances of excessive profits or losses due to conditions over which the taxpayer had no control and which are not likely to occur again it is unsafe to use the average annual profits during that period as a criterion of the future. It .is undisputed that from 1914 on until the close of the year 1919 the taxpayer due to war and postwar conditions enjoyed unprecedented excessive profits. Needless to say there were no immediate prospects at the taxation period of a recurrence of those conditions. Under the circumstances the average annual profits of the taxpayer during that period could furnish no criterion of its future prospects and possibilities. Nor were the profits of the pre-war period of any evidentiary value in the absence of any showing of similarity between the conditions then obtaining and those existing or reasonably to be expected at the taxation period. This does not mean, however, that the capitalization of profits test may not hereafter be employed. The present and anticipations for the future may be sufficient for the purpose. A rate of capitalization is but another term for the rate that the investing public expects upon investments in the taxpayer or in similar enterprises generally.

In the instant case the taxation period occurred during the progress of a sharp reaction resulting from excessive profits enjoyed generally during and immediately following the world's war. The future price of sugar was uncertain with a decided downward trend. Future instability and the consequent timidity of the investing public would result in a demand for larger returns and a correspondingly high rate of capitalization. But the record is absolutely silent as to what rate of return the investing public expected in the case of the taxpayer or in the case of similar business generally at the assessment date. Nor did the tax assessor present any evidence as to what the rate of capitalization should be. He simply averaged the profits of the taxpayer for the preceding eight years and left the court to take its choice of such rate of capitalization as it might see fit. Upon this state of the record and under the circumstances recited we cannot say what the rate of capitalization should be and in the absence of this essential element of computation the method fails.

Due to the circumstances rendering the average annual profits of the taxpayer during the ten years preceding the taxation period of no assistance in estimating the profits to be expected by it in the future and due to the absence of any evidence permitting this court to determine the rate of capitalization which it should employ, the capitalization of profits method of computing the cash value of the taxpayer at the taxation period must of necessity be abandoned.

The same difficulty is apparent in attempting to apply the stock sale test to the situation which existed in 1920 when the price of sugar fluctuated between 4.6 low and 23.57 high. The highest price was reached in the month of May followed by steady and rapid decline, the market closing on the last day of the year at 5.32. With the

Perry, J., concurring.

fluctuation in the price of sugar there was a corresponding fluctuation in the selling price of the company's stock. In January of 1920 the highest sale recorded was $75 a share, the lowest $62 a share. There was a rapid rise until May of the same year, the highest selling price during that month being $77.50, the lowest $72.75. From then on the price of the company's stock declined until the market reached its lowest ebb in December when it sold at $39 a share. On December 31 the market closed at $43.50 per share. The taxpayer claimed that the conditions existing during the year 1920 as well as those existing during the last month of that year prohibited the application of the stock sale method. With this we agree. We can see neither reason nor justice in the claim made by the tax assessor that the average selling price of the year 1920 of $62.42 per share should be employed as a basis of computing the cash value of the property of the taxpayer.

In the absence of competent and material evidence showing that the cash value of the combined property of the taxpayer is in excess of the aggregate of the cash value of its several items, the decision of the tax appeal court must be affirmed and it is so ordered.

*J. B. Lightfoot* for the assessor.

*W. L. Stanley (Smith, Warren, Stanley & Vitousek* on the brief) for the taxpayer.

### CONCURRING OPINION OF PERRY, J.

As to the value of the 14,500 acres of cane land: in view of the agreement of the parties that the cash value of the tangible assets other than the growing crops and the cane land is $5,499,299.34 and that the cash value of lands other than cane lands is $595,500, and of our finding affirming the valuation placed by the tax appeal court upon the growing crops, to wit, $4,000,000, and in

view further of the fact that the appeal in this case is from a total valuation of $14,000,000 and is not from any lower total valuation and of our conclusion that neither by a consideration of the profits of the past nor by a consideration of the sales of stock on the market can a total valuation in excess of $14,000,000 be reached or justified, it is apparent, as stated by the tax appeal court, that the 14,500 acres of cane lands must bear a valuation of $3,905,200.66 in order to make up the total of $14,000,000 unappealed from by the taxpayer or a valuation per acre of $269.32. Upon all of the evidence before this court I find, as did the tax appeal court, that this valuation is excessive and that therefore the Territory is not aggrieved in this respect. Under the circumstances it is not incumbent on the court, as it seems to me, to fix the precise value of the land at the assessment date under consideration.

The book values of the land, like book values of other classes of property, while technically admissible as evidence, are to my mind of very slight weight, owing to the circumstances surrounding their adoption by the corporation for purely bookkeeping purposes.

The "cash value" under the tax law means the value for purposes of sale, if the property is salable, and not either the value to the owner or the cost of reproduction. *In re J. B. Castle,* 15 Haw. 1. It is conceivable, however, that under some circumstances this statutory cash value may be the same in amount as the cost of production. The latter is admissible as evidence of the former.

In all other respects I concur in the reasoning of the majority, as I do also in the conclusion affirming the decision appealed from.